IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROGER LEE MORSE,

    Plaintiff,

v.                              Civil Action No. 3:13cv361

VIRGINIA DEPARTMENT
OF CORRECTIONS, <u>et al.</u>,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANTS' MOTION TO DISMISS (Docket No. 11) filed by the defendants, Virginia Department of Corrections, Harold Clarke, N.H. Cookie Scott, Paul Broughton, Rufus Fleming, Gary Bass, Wendy S. Hobbs, Henry Diggs, Jr., Marie Vargo, William Breed, Mack A. Bailey and Letha Hite (hereinafter "DOC" and "DOC Defendants").

Defendant Claudia Farr also filed a MOTION TO DISMISS (Docket No. 13) wherein she joined the DOC Defendants' motion and adopted the arguments therein "by reference as if set forth in their entirety." For the reasons set forth herein, DOC DEFENDANTS' MOTION TO DISMISS (Docket No. 11) and Farr's MOTION TO DISMISS (Docket No. 13) will be granted.

## FACTUAL BACKGROUND

Roger Lee Morse has filed a 140-page Complaint (with 189 pages of exhibits) that the DOC Defendants have accurately characterized as a "shotgun pleading." On the first page of the Complaint, Morse has included a laundry list of eighteen federal laws that he seems to believe were violated by the DOC Defendants. Compl. at 1-2. These alleged violations and the facts included in the Complaint span nearly all of Morse's time as an employee of the DOC, and the Complaint names as defendants nearly every supervisor with whom Morse worked. There are a total of twenty-two (22) named defendants, some of whom no longer work for the DOC  However, at the heart of the Complaint is Morse's contention that he suffered employment discrimination at the hands of the DOC and certain of its employees.  Morse also presents several non-employment discrimination violations that are addressed at the end of this Memorandum Opinion.

Taken in the light most favorable to Morse, the facts are set forth below.  Morse began working for the DOC on June 26, 1986.  In April 1995, Morse lost his son to a homicide.  Because of the trauma and emotional stress of this loss, Morse claims that he was "forced to resign" on August 3, 1995 because he and his employer could not agree to an appropriate extension of leave time.  According to Morse, the "forced resignation" was evidence of discriminatory treatment.  Morse claims that other

2

employees who requested additional leave were allowed more time off than he was offered and were not forced to resign.

In December of 1997, Morse returned to work for the DOC  At some point beginning in late December 1997 and continuing through January 1998, Morse was involved in a disagreement with his employer and was fired following an incident in which Morse's supervisor accused him of calling another supervisor a "bitch."  That incident occurred in the probationary period during which the DOC could terminate Morse for failure to maintain satisfactory job performance.  Morse's employment was terminated because of that incident.

On April 28, 2000, Morse filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the DOC's decision to terminate him in 1998 was a violation of the law. On February 26, 2001, the EEOC issued Morse a "right to sue" letter. Pl.'s Ex. 1, ECF No. 3-1. On May 23, 2001 (approximately three and one half years after being fired in January 1998, and 86 days after receiving his EEOC letter), Morse filed an action in this Court. See Civil Action No. 3:01cv337 (hereinafter "Morse I").[1]  The Complaint in Morse I alleged all of the foregoing facts as grounds for Morse's claims for discrimination, retaliation, hostile work environment, and

---

[1]  Morse filed an action against former Secretary of Defense Robert Gates in 2007 alleging various violations of federal laws relating to his military service. See 3:07cv600.

defamation.   On January 28, 2002, Morse's claims regarding his 1998 termination, hostile work environment, and his claims under the Virginia Human Rights Act were dismissed for failure to exhaust administrative remedies and for being untimely. <u>See</u> ECF No. 12-1, Def.'s Ex. 1 ("January 28 Order").

On the day set for trial, Morse moved for a voluntary dismissal of the remaining claims. <u>See</u> ECF No. 12-2, Def.'s Ex. 2. That motion was granted, subject to two conditions to any refiling at a later date:   (1) that Morse not allege the same claims that had been dismissed by the January 28 Order; and (2) that Morse obtain counsel before re-filing.

On March 3, 2003, Morse was rehired by the DOC  According to Morse, he was supposed to have been reinstated instead of being hired as a new employee.   As a result of his classification as a new hire, he was assigned to a lower rate of pay.  Morse noticed the alleged discrepancy in his pay as a new hire in April 2003.   In August 2003, Morse's military unit was mobilized and he was sent to Iraq, where he served from August 2003 until September 2010 when he returned to work at DOC full time.[2]  While he was away on active military duty, Morse claims that he did not receive the bonuses, raises, and other pay benefits to which he was entitled under the Uniformed Services

---

[2] Morse did not include in his Complaint the dates of his service that were considered "active duty."   Thus, it is unknown when, exactly, he was deployed to Iraq.

Employment and Reemployment Act ("USERRA"). Id. However, his own filings show that he did, in fact, receive raises while serving in the military. (See Pl.'s Ex. C at 18, outlining salary increases Morse received between 2003 and 2010).

Next, in September 2011, Morse alleges that he was discriminated against when he was not selected to interview for a job promotion for which he applied. See Pl.'s Ex. A, ECF No. 3-1 at 6. However, correspondence between Morse and the employee grievance committee (which was attached as exhibits to the Complaint) shows that he was not selected for an interview because he did not fully complete his application for employment; he left substantial portions of the application blank. See Pl.'s Ex. C, ECF No. 3-3 at 29. Morse essentially claims, in conclusory form, that DOC's policy of rejecting incomplete applications is discriminatory, but his Complaint identifies no examples of other similarly situated people who were allowed to interview for a position after submitting an incomplete application. Additionally, Morse did not file an internal DOC grievance about the incident within the 30-day time limit. Therefore, his internal complaint about his non-selection for an interview was invalid under DOC's grievance procedure, and the grievance process ended.

Following that alleged discrimination in September of 2011, Morse filed a new EEOC charge. That charge was resolved on

October 25, 2011, and a notice of a right to sue was mailed to Morse on that day. The Court presumes that Morse received that letter on October 28, 2011.[3] Morse does not suggest otherwise.

Morse filed this action on July 16, 2013. Presuming that Morse received his right to sue letter on October 28, 2011, the date of filing is 627 days after the receipt of the right to sue letter, and approximately 684 days after the alleged discrimination (counting from September 1, 2011). The Complaint posits no reason for the delay in filing.

The DOC has moved to dismiss the case on the following grounds: (1) the Court's lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); (2) Morse's failure to set forth a clear and succinct pleading per Fed. R. Civ. P. 8(a) and 10(b); (3) Morse's failure to meet the pleading requirements laid out in Twombly and Iqbal;[4] (4) *res judicata*; (5) collateral estoppel; (6) Morse's failure to comply with various statutes of limitation; (7) Morse's failure to file suit within 90 days of the issuance of an EEOC right to sue notice; (8) Morse's failure to comply with the January 28 Order granting his request for voluntary dismissal; (9) the qualified immunity of the DOC

---

[3] Courts in the Fourth Circuit presume receipt of an EEOC right to sue letter three days after the date it was mailed if the date or receipt is unknown or in dispute. See, e.g., Reid v. Potter, 2007 U.S. Dist. LEXIS 87050, *6 (W.D.N.C. Nov. 9, 2007).

[4] See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Defendants (as applicable to all non-Title VII claims); and (10) the Eleventh Amendment's grant of sovereign immunity to agencies of the Commonwealth.  Most (if not all) of the DOC's grounds for dismissal are valid and could be the basis for dismissal. However, the motions under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) are sufficient to dispose of this case.  Thus, they will be addressed.

## LEGAL STANDARD

A recent decision from Judge Spencer nicely lays out the legal standards for deciding a motion to dismiss in an employment discrimination case.  "Rule 12 allows a defendant to raise a number of defenses to a claim for relief at the pleading stage. Among these are the defenses that a court lacks subject-matter jurisdiction over the case . . . and that the pleadings fail to state a claim upon which the court can grant relief." Jones v. Imaginary Images, Inc., 2012 U.S. Dist. LEXIS 111682, *11-12 (E.D. Va. Aug. 8, 2012).  "While a court must typically construe the pleadings of a pro se plaintiff liberally, . . . a court considering a motion to dismiss must still evaluate the pro se plaintiff's pleadings according to the standards developed under Rule 12." Id.

"When a party sets forth a Rule 12(b)(1) defense in addition to other Rule 12 defenses, the court should resolve the

12(b)(1) motion first, because if the court lacks jurisdiction, the remaining motions are moot." Jones, at *15 (citing Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548 (4th Cir. 2006)).

## ANALYSIS

Before filing an employment discrimination claim in federal court, a plaintiff alleging discrimination under Title VII must complete certain "jurisdictional prerequisites." Jones, at *16. "These prerequisites ordinarily are (1) the filing of a timely charge of discrimination with the EEOC within 180 days of the occurrence of the alleged discrimination, or 300 days if the plaintiff has instituted proceedings with a state or local agency; (2) the receiving of a statutory notice of right to sue; and (3) the timely commencement of a lawsuit based on that charge within 90 days of receiving the notice." Jones, at *16-17 (internal citations omitted).

Here, Morse completed jurisdictional prerequisites (1) and (2), but failed to timely file an action in court within 90 days of receiving his right to sue letter from the EEOC. Instead, Morse waited 627 days from the date of receipt of his right to sue letter and he has offered no explanation for his delay.[5]

_____

[5] In any event, it is unlikely that equitable tolling of the 90-day filing requirement could apply here because the filing requirement is strictly construed. See Lewis v. Norfolk S.

8

To the extent that any of Morse's employment discrimination claims were not raised in his EEOC charge, but were raised first in this action, they must be dismissed for failure to exhaust administrative remedies, which, of course, deprives the Court of jurisdiction to hear the case. "Failure to exhaust administrative remedies precludes a federal court from exercising subject matter jurisdiction in the context of Title VII." Edwards v. Murphy-Brown, L.L.C., 760 F. Supp. 2d 607, 613 (E.D. Va. 2011).[6]

Both failure to exhaust administrative remedies and failure to timely file suit following receipt of a right to sue letter deprive this Court of jurisdiction to hear Morse's Title VII claims. See Jones, 2012 U.S. Dist. LEXIS 11, at * 16-17 (holding

---

Corp., 271 F. Supp. 2d 807, 811 (E.D. Va. 2003); see also Harvey v. City of New Bern Police Dep't, 813 F.2d 652 (4th Cir. 1987) (affirming a dismissal of a suit filed after 89 days as untimely); Boyce v. Fleet Finance Inc., 902 F. Supp. 1404 (E.D. Va. 1992)(dismissing a suit filed after 92 days as untimely).

[6] Title VII claims include allegations of employment discrimination based on an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Other anti-discrimination statutes have also adopted the procedural requirements of Title VII. Those statutes include, as relevant here, the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). See McIntryre-Handy v. APAC Customer Servs., 422 F. Supp. 2d 611, 620 (E.D. Va. 2006 (citing Davis v. Virginia Commonwealth Univ., 180 F. 3d 626, 628 n.3 (4th Cir. 1999)); Cross v. Suffolk City Sch. Bd., 2011 U.S. Dist. LEXIS 75970, *22 (E.D. Va. July 14, 2011) (citing 29 U.S.C. § 626(d)(1)). Therefore, all of Morse's age, disability, and race-based discrimination claims are subject to the same jurisdictional bar that prohibits the Court from hearing his case.

that a "plaintiff's failure to exhaust such administrative remedies 'deprives the federal courts of subject matter jurisdiction over the claim.'"(quoting <u>Jones v. Calvert Group Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009)); <u>Scott v. Teachers Ins. & Annuity Ass'n of Am.</u>, 2013 U.S. Dist. LEXIS 84612, *6 (W.D.N.C. June 14, 2013)(dismissing the plaintiff's case for lack of subject matter jurisdiction because the plaintiff waited 322 days after receiving her right to sue letter from the EEOC)). Therefore, the DOC's motion to dismiss for lack of subject matter jurisdiction will be granted.

## PLAINTIFF'S OTHER CLAIMS

### 1. Uniformed Services Employment and Reemployment Act (USERRA) 38 U.S.C. §§ 4301 et seq.

In an action against a state employer, federal courts lack jurisdiction to hear a plaintiff's USERRA claims. <u>Hammett v. S.C. Dep't of Health & Envtl. Control</u>, 2013 U.S. Dist. LEXIS 46896 (D.S.C. Jan. 25, 2013); <u>see also</u> 38 U.S.C. § 4323(b)(2) (stating that suits brought by private individuals against a "State (as an employer)" may be brought in a state court). <u>Hammett</u> and other courts have held that § 4323(b)(2) limits USERRA claims against state employers to state courts, and prohibits them from being heard in federal courts. Morse is alleging a USERRA violation by the DOC, a state agency just as was the South Carolina Department of Health & Environmental

Control in Hammett.    Here, as in Hammett, this Court lacks jurisdiction over any USERRA claims Morse may be alleging.

## 2.    Whistleblower Protection Act (WPA) 5 USC § 2101 et seq.

The WPA protects federal employees in certain jobs from retaliation from whistleblowing activities. See 5 U.S.C. § 2105. While Morse is a member of the armed services, he is not alleging any sort of retaliation perpetrated against him by his military employers. He has only stated facts relating to his disputes with his state employer, the DOC  The WPA affords Morse no protection for his interactions with his state employer. Thus, his allegations of a violation of the WPA will be dismissed for failure to state a claim for which relief can be granted under Federal Rule Civ. P. 12(b)(6).

## 3.    "Soldier Sailor Relief Act" now known as the Servicemembers Civil Relief Act ("SCRA") 50 U.S.C. App. §§ 501 et seq

.    The SCRA "provides [to members of the armed services] a variety of protections against such diverse ills as cancellation of life insurance contracts . . . and taxation in multiple jurisdictions." Gordon v. Pete's Auto Serv. of Denbigh, 637 F.3d 454, 458 (4th Cir. Va. 2011). Additionally, the Act prevents such civil actions as foreclosures on servicemembers' property while they are serving in the military. See 50 U.S.C. App. § 532(3). The general purpose of the Act is to provide a "temporary suspension of judicial and administrative proceedings

11

that may adversely affect the civil rights" of servicemembers. 50 U.S.C. App. § 502.   However, absent the initiation of one of these civil proceedings against a servicemember, a plaintiff cannot file suit under the SCRA itself.   Morse here has not shown that he was subject to civil court action, and has not alleged a violation of the SCRA provisions designed to protect him if he were subject to such a suit.   Moreover, Morse appears to have simply listed the statute on the cover of his Complaint. He has not specifically alleged any related violation of that statute.   In any event, the provisions of the SCRA make no mention of employment or reemployment rights of servicemembers. Any reemployment or employment discrimination claims on the basis of Morse's military service would need to be addressed under USERRA, which (as noted previously) governs the employment and reemployment of people serving in the military.   Therefore, this claim will be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

4.   **Family Medical Leave Act ("FMLA") 29 U.S.C. §§ 2601 et seq.**

The FMLA has a two-year statute of limitations. 29 U.S.C. § 2617(c)(1). A three-year statute of limitations applies if the employer's conduct was willful. 29 U.S.C. § 2617(c)(2).   Here, Morse presumably intends to allege a violation of the FMLA arising out of his employer's denial of additional leave time during the trial of Morse's son's killer.   Morse has not plainly

12

stated this claim, but has again simply listed a violation of
the FMLA on the header of his Complaint and left the Court to
determine how a violation of that statute might fit within the
facts he has alleged. In this case, the only facts that could
possibly give rise to a FMLA violation would be the dispute
about leave following the killing of Morse's son's. That event,
however, occurred in 1995 and is well-beyond even the three-year
statute of limitations set by the statute. Morse's FMLA claims
(to the extent he has made them) are time barred and will be
dismissed.

5.   **Victim Witness Rights Act (VWRA) Va. Code Ann. § 19.2-11.01**

The VWRA is a Virginia statute setting the standards for
handling the needs and rights of crime victims following the
initiation of judicial action against the accused perpetrator.
This statue is inapplicable to Morse for two reasons: (1) The
VWRA does not create a private right of action for a violation
of the statute, and (2) even if the statute did create a cause
of action, without a federal claim to provide the Court with
supplemental jurisdiction, it is unlikely the Court would have
jurisdiction to hear a single claim for a violation of state
law. The VWRA simply spells out procedures for law enforcement
and prosecutors for alerting victims to plea agreements, prison
releases, outcome of cases, support services for crime victims,
etcetera. It does not grant Morse any substantive rights for

13

which he is claiming a denial.  Even if it did, the only facts to even possibly support such a claim occurred in 1995 and would be barred by the statute of limitations.

The same problems with a lack of supplemental jurisdiction would apply to Morse's other listed state law violations. Morse has included "actual fraud" and defamation of character in the statutes he claims were violated.  Without some sort of federal question to keep the case in federal court, the Court has no jurisdiction to also hear these claims.[7]

## 6.   Age Discrimination in Employment Act (ADEA) 29 U.S.C. §§ 621 et seq. and the Americans with Disabilities Act (ADA) 42 U.S.C. §§ 12101 et seq.

Before filing suit for discrimination under the ADA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC. McIntyre-Handy, 422 F. Supp. 2d at 620 (citing Davis, 180 F.3d at 628 n.3).  The same requirement applies to discrimination claims made under the ADEA. Cross, 2011 U.S. Dist. LEXIS 75970, *22 (citing 29 U.S.C. § 626(d)(1)). The issuance of a right to sue letter and the requirement that plaintiffs file suit within 90 days of receipt of that letter

---

[7] 28 U.S.C. § 1367(a) states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Without the original jurisdiction over Morse's other claims, the Court has no supplemental jurisdiction over his state law claims.

are the same for the ADA, ADEA, and the race-based employment discrimination claims Plaintiff brings under Title VII. See Cameron v. Potter, 2006 U.S. Dist. LEXIS 3217, *4 (E.D. Va. Jan. 10, 2006) (applying the 90-day rule to an ADEA claim); Jones v. Imaginary Images, Inc., 2012 U.S. Dist. LEXIS 111682, *17 (E.D. Va. Aug. 8, 2012) (noting the EEOC administrative requirements for Title VII and ADA claims). As discussed above, Morse waited 627 days from receiving his right to sue letter from the EEOC to file this action. Any information that was included in Morse's EEOC right to sue letter has essentially "expired" and any information that was not included in the EEOC charge but was set out for the first time in the Complaint here is jurisdictionally barred for failure to exhaust administrative remedies.

### CONCLUSION

For the above reasons, DEFENDANTS' MOTION TO DISMISS (Docket No. 11) and Farr's MOTION TO DISMISS (Docket No. 13) will be granted.

Because the Court is dismissing Morse's action, PLAINTIFF'S MOTION FOR RESTRAINING ORDER, PRELIMINARY INJUNCITON OF RELIEF,

WITH MEMORANDUM OF LAW IN SUPPORT (Docket No. 17) need not be addressed.

The Clerk is directed to send a copy of the Memorandum Opinion to the plaintiff and to counsel for the defendants.

It is so ORDERED.

_____ /s/      _REP_____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date:   March 31, 2014